IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Case No. CR-01-196-E-BLW |
| Plaintiff, | ) | |
| | ) | **MEMORANDUM** |
| v. | ) | **DECISION AND ORDER** |
| | ) | |
| JOHN ERNEST DADE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Pending before the Court is Defendant's Motion for New Trial (Docket No. 359), which the Court gave Defendant permission to file *pro se* despite his being represented by counsel at the time for purposes of resentencing. *Order* (Docket No. 356). In accordance with the Court's Order, the Government has responded only to the issue of whether the motion is timely. *Response* (Docket No. 360). In his Motion for New Trial, Defendant refers to his inability to defend himself without all of his "records, transcripts, and court docket motions." The Court shall construe those comments as a motion for records and transcripts. For the reasons set forth below, the Court shall deny both motions.

**Order - 1**

## BACKGROUND

On September 16, 2002, Defendant was convicted by a jury of Counts One, Two, Three, Four, and Six of the Second Superseding Indictment charging him with threatening interstate communications, interstate stalking, interstate domestic violence on February 18, 2001, use of a firearm in relation to a violent crime, and interstate domestic violence on October 20, 2000, respectively.  Defendant appealed his conviction and sentence.  The Ninth Circuit affirmed his conviction, noting the overwhelming evidence of guilt, but vacated his sentence and remanded for resentencing in light of *United States v. Ameline*.  (Docket No. 279).  Shortly thereafter, Defendant started filing numerous *pro se* motions.[1]

This Court appointed counsel Kelly Kumm to represent Defendant in connection with resentencing.[2]  (Docket No. 311).  At the same time, the Court directed Defendant to cease filing *pro se* motions.  Because he did not do so, the Court directed the Clerk of Court not to file any further *pro se* motions.  (Docket No. 328).

---

[1]  A review of the record indicates that Defendant filed approximately 100 *pro se* motions and other documents between the time of the verdict and sentencing and approximately 45 between the sentencing and resentencing.

[2]  Defendant was represented through trial primarily by Steven Richert. From the verdict through sentencing, he was initially represented by Mr. Richert but eventually appeared *pro se* for a few months with Mr. Richert acting as standby counsel.  Defendant thereafter was represented by retained counsel David Finlayson for the last five months prior to and including sentencing.

**Order - 2**

Defendant subsequently demanded on three occasions that Mr. Kumm withdraw.  (Docket Nos. 324, 340 and 346).  At the hearing on the third motion to withdraw, Mr. Kumm advised the Court that one of the reasons for Defendant's demanding his withdrawal was Mr. Kumm's refusal on ethical grounds to file a motion for new trial at Defendant's insistence.  The Court directed Mr. Kumm to continue to represent Defendant for resentencing and to work with Defendant to resolve the ethical dilemma regarding the new trial motion.  (Docket No. 348).

Subsequently, Mr. Kumm filed a Motion to Permit *Pro Se* Motions for New Trial based on Defendant's belief that there were a number of grounds for a new trial.  (Docket No. 353).  The Court granted the Motion allowing Defendant to file only one motion listing all grounds upon which he contended that he is entitled to a new trial.  (Docket No. 356).  Defendant subsequently filed the pending Motion for New Trial alleging numerous grounds, including newly discovered evidence.  As stated above, the Government has responded to the timeliness issue.

## MOTION FOR NEW TRIAL

The Government contends that Defendant's failure to file his new trial motion within the seven days specified by Rule 33 was a fatal error.  Relying on *Eberhart v. United States*, 126 S. Ct. 403, 405 (2005), the Government argues that the time limit in Fed. R. Crim. P. 33 is an inflexible, nonjurisdictional, claim

**Order - 3**

processing rule requiring filing either within the 7-day period or within an extension of time granted within the 7-day period.  While recognizing that there is a  "newly discovered evidence" exception to Rule 33 which allows filing a new trial motion within three years of a verdict, the Government argues that Defendant did not allege newly discovered evidence.  The Government further argues, that even if he did allege newly discovered evidence, the pending motion is untimely because it was filed three years and eleven months after the verdict.

The Government's position is correct under the former Rule 33.  However, the rule was amended effective December 1, 2005, prior to the filing of Defendant's motion, effectively allowing the Court to now consider excusable neglect in failing to timely file if the Court determines that the amended rule should apply.

### A.    Applicable Law

#### 1.    2005 Amendments to Rules 33 and 45.

Prior to December 1, 2005, Rule 33(b)(2) stated as follows: "Any motion for a new trial grounded on any reason other than newly discovered evidence must be filed within 7 days after the verdict or finding of guilty, or within such further time as the court sets during the 7-day period."  The 2005 amendment to the rule, which became effective on December 1, 2005,  removed the requirement that the court

**Order - 4**

must act within the seven days to grant an extension for filing a motion for new trial.  The amendment resulted in the current Rule 33(b)(2) which states as follows: "Any motion for a new trial grounded on any reason other than newly discovered evidence must be filed within 7 days after the verdict or finding of guilty."

A stated purpose of the 2005 amendment was to provide for consistency among the various rules containing timing requirements:

> Assuming that the current rule [pre-2005 amendment rule] was intended to promote finality, there is nothing to prevent the court from granting the defendant a significant extension of time, so long as it does so within the seven-day period. Thus, the Committee believed that the rule should be amended to be consistent with all of the other timing requirements in the rules, which do not force the court to act on a motion to extend the time for filing within a particular period of time or lose jurisdiction to do so.

> Accordingly, the amendment deletes the language regarding the court's acting within seven days to set the time for filing. Read in conjunction with the conforming amendment to Rule 45(b), the defendant is still required to file a timely motion for a new trial under Rule 33(b)(2) within the seven-day period specified. The defendant may, under Rule 45, seek an extension of time to file the underlying motion as long as the defendant does so within the seven-day period. But the court itself is not required to act on that motion within any particular time. *Further, under Rule 45(b)(1)(B), if for some reason the defendant fails to file the underlying motion for new trial within the specified time, the court may nonetheless consider that untimely underlying motion if the court determines that the failure to file it on time was the result*

**Order - 5**

*of excusable neglect.*

Fed. R. Crim. P. 33 advisory committee's note (emphasis added).[3]

Defendant's pending motion for new trial was filed on August 15, 2006, well after the effective date of the 2005 amendments to Rules 33 and 45.  However, obviously, the case was commenced and the trial, sentencing, appeal, and remand occurred prior to that time.  Accordingly, the Court must determine whether the amended versions of Rules 33 and 45 or the pre-amendment version of Rule 33 should apply to this motion.  If the pre-amendment version applies, any decision by the Court extending the deadline for filing a motion for a new trial would be untimely, and the Court would be required to summarily deny the motion.  If the post-amendment version applies, the Court may still consider Defendant's motion for new trial if he shows excusable neglect for not filing the motion in a timely manner.

---

[3]  Federal Rule of Criminal Procedure 45 was likewise amended in 2005 to conform with the amendment to Rule 33 and others.  The former Rule 45 provided, in relevant part, that the Court could not grant an extension of time except as provided in Rule 33.  The current Rule 45 does not contain that limitation.

**Order - 6**

**2.    Rules 33 and 45 as amended effective December 1, 2005, Apply to post-Amendment Motion.**

The order that accompanied the submission of the 2005 amendments to Congress stated in relevant part: "That the foregoing amendments to the Federal Rules of Criminal Procedure shall take effect on December 1, 2005, and shall govern in all proceedings thereafter commenced and, insofar as just and practicable, all proceedings then pending." Order of April 25, 2005 of the Supreme Court of the United States Adopting and Amending the Federal Rules of Criminal Procedure, 544 U.S. 1183 (2005). That enabling language is similar to language typically used by the Supreme Court when submitting rule amendments to Congress. *See United States v. Bowler*, 252 F.3d 741, 744 (5th Cir. 2001) (interpreting enabling language pertaining to 1998 amendments to Rule 33 and citing several cases in accord).[4]

In *Bowler*, the defendant filed a motion for a new trial after the effective date of the 1998 amendment to Rule 33 and after his judgment had been affirmed by the Fifth Circuit and his petition for a writ of certiorari had been denied by the Supreme Court. Furthermore, there were no motions then pending. His new trial

---

[4]  The 2005 enabling language is identical to the 1998 enabling language except that the 2005 language refers to "proceedings" whereas the 1998 language refers to "proceedings in criminal cases."

**Order - 7**

motion was filed within two years of the final judgment as required by the then

pre-amendment rule but not within three years from the date of the jury verdict as

required by the 1998 amendment.  Seeking to avoid application of the 1998 version

of the rule, the defendant argued that the new rule applied "only to *cases*

commenced after the effective date of the amendment, or insofar as just and

practicable, to proceedings pending on the effective date of the amendment, neither

of which applied to his Rule 33 motion" because the judgment was final and there

were no pending motions.   *Bowler*, 252 F.3d at 745.  On the other hand, the

Government argued that the new rule applied because there were no proceedings in

Bowler's criminal case pending when the new rule took effect and Bowler's Rule

33 motion itself was a proceeding commenced after the effective date of the

amendment rendering the new rule applicable.

The Fifth Circuit ultimately interpreted the enabling language to refer to

pending *cases* and not merely to pending *proceedings*.  The court based its

determination on other cases which interpreted the Supreme Court's standard

language to mean cases rather than proceedings.  *See Bowler*, 252 F.3d at 744

(citing *United States v. Roberts*, 88 F.3d 872) (10th Cir. 1996); *Silvious v.*

*Pharaon*, 54 F.3d 697 (11th Cir. 1995); *Cleveland v. Porca Co.*, 38 F.3d 289 (7th

Cir. 1994); *Skoczylas v. Fed. Bureau of Prisons*, 961 F.2d 543 (5th Cir. 1992); *In*

**Order - 8**

*re Jones*, 970 F.2d 36 (5th Cir. 1992).  Furthermore, the Fifth Circuit noted that "there is a 'general rule that courts apply procedural rules as they exist at the time of decision, as long as no manifest injustice results.'" *Bowler*, 252 F.3d at 746 (quoting *In re Jones*, 970 F.2d at 38).  For these reasons, the Fifth Circuit decided that the amended Rule 33 applied to *cases* commenced after the effective date of the amendment and, insofar as just and practicable, to *cases* pending on the effective date.  *Bowler*, 252 F.3d at 746.

Although it leads to a different result here, this Court agrees with the Fifth Circuit's conclusion.  The Court finds that the 2005 amendments would apply here, because the *case* was pending at the effective date of the amendments, since the case had been remanded by the Ninth Circuit for re-sentencing, even though the *proceeding* – i.e., the motion for new trial – had not been filed.  Therefore, the new version of the rules apply, to the extent that such application is just and practicable.[5]  However, the amended rule would not apply to any grounds already raised and rejected by the Court prior to the amendment.

**B.    Excusable Neglect**

---

[5]  Although application of the amended rule in *Bowler* would have worked to *Bowler's* detriment and was therefore found not to be just and practicable, application of the amended rule here works to Defendant's benefit in that it allows the Court to consider the merits of his motion if it determines that Defendant's failure to timely file his new trial motion was due to excusable neglect.

**Order - 9**

If any new grounds have been raised in the pending new trial motion, the Court may consider excusable neglect.  In determining whether excusable neglect exists, a district court must weigh the four equitable factors outlined in *Pioneer Investment Services, Inc. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380 (1993).  *See Pincay v. Andrews*, 389 F.3d 853, 860 (9th Cir. 2004).  Those factors are: "(1) the danger of prejudice to the non-moving party, (2) the length of delay and its potential impact on the judicial proceedings, (3) the reason for the delay, including whether it was within the reasonable control of the movant, and (4) whether the moving party's conduct was in good faith.  *Pincay*, 389 F.3d at 855.

As grounds for his late filing, Defendant refers the Court to his numerous prior *pro se* new trial motions, and cites unavailability of his legal file, failure of the Court to re-sentence him expeditiously, length of time of the direct appeal, lack of access to law books due to BOP incidents, severe mental health issues, refusal of Mr. Finlayson and Mr. Kumm to release his court records, the failure of the Court to receive his timely filed new trial motion after trial, and insanity as allegedly corroborated by Dr. Lindsey's report at sentencing.

The Court need not resort to an analysis of the *Pioneer* factors in this case to determine whether excusable neglect exists.  Some of the stated reasons for the untimely filing, such as failure of the Court to resentence him expeditiously and

**Order - 10**

length of time of the appeal are obviously irrelevant.  Others, such as his claim of

insanity allegedly corroborated by Dr. Lindsey are rebutted by the record.  Dr.

Lindsey did not determine that he was insane.  Furthermore, a careful review of the

file indicates that the remainder of the stated reasons did not prevent him from

filing prior new trial motions on most of the same issues he now raises.  In other

words, his prior new trial and similar motions belie his present assertions that the

stated grounds precluded him from filing the present motion.   Those motions were

denied in part because they were untimely under the version of Rule 33 in effect at

the time the motions were decided and in part because of failure to meet the

requisite showing for alleged newly discovered evidence.  A determination of the

timeliness issue necessarily involves a comparison of the grounds for a new trial in

the current motion with the grounds alleged in the prior motions.

### 1.    Grounds for New Trial Stated in Current Motion

Consistent with his numerous prior *pro se* motions, Defendant's Motion for

New Trial is somewhat difficult to follow.  However, it appears that he is alleging

as grounds the following:

> 1.    Ineffective assistance of counsel at trial in general and in certain
> other respects as follows: failure to move to have tapes of
> telephone conversations with the victim banned at trial; failure
> to call "dozens" of witnesses that could have provided
> impeaching testimony; failure to contact over eight alibi
> witnesses regarding the October 20 and 21, 2001 incident;

**Order - 11**

failure to hire a private investigator;

2. Ineffective assistance of counsel on appeal.

3. Improper vouching and improper motions by the Government; improper reference to 9-11 terrorists in closing arguments; Government's repeated references to Defendant's being in jail;

4. Improper and erroneous testimony by the Government's expert witness, Ms. Klingbeil, which subliminally, illegally, and psychologically influenced the jury; her failure to state her expert opinion.

5. Improper admissibility of tape recordings of telephone conversations at trial because of 10 hours of missing tapes.

6. "Bogus" plea agreement, a copy of which the Government and all defense counsel have refused to return to him.

7. Ms. Aikele's telling co-worker that she lied.

8. Perjured testimony of Mr. Watson.

9. Ineffective assistance of Mr. Kumm – Failure to file a subpoena to collect all of the prison tape recordings made between Defendant and Plaintiff (sic) indicating perjury on the part of Ms. Aikele (presumably the 2005 tapes the Court subsequently ordered BOP to produce to counsel) that are newly discovered evidence; refusal to contact Idaho Falls attorney who would "may well" prove that Ms. Aikele's testimony was blatant perjury; refusal to file a motion for a private investigator to possibly prove that the AUSA continues to withhold *Brady* evidence.

10. Improper vouching of Ms. Aikele's changing stories.

11. Government's tampering with and threatening a defense witness resulting in his not testifying about everything he knew.

**Order - 12**

12.     Government's deceit regarding state court proceeding and court's order not to tell the jury the truth about the two-part plea agreement between Defendant and the state court.

13.     Erroneous sealing of the Huntsman interview with Ms. Aikele which Defendant apparently believes would rebut Ms. Aikele's testimony and indicate her bad character.

14.     Alleged perjury of Ms. Aikele as confessed to Ms. McCleery and shown on prison tapes.

15.     Improper search warrant for Utah residence and improper search of Defendant's truck;

16.     Government's continued withholding of evidence involving interviews with certain individuals.

17.     Double jeopardy.

### 2.     Prior New Trial Motions

As stated above, the jury returned the verdict against Defendant on September 16, 2002. The Court notes that Defendant was represented by competent counsel during the seven days following the verdict and finds it significant that counsel did not file a new trial motion.

Defendant filed numerous *pro se* new trial and other motions, some of which were filed after December 1, 2005, the effective date of the 2005 amendments. While some of the motions were not designated as new trial motions, they raised issues now raised in the pending new trial motion. The following is a not

Order - 13

necessarily exhaustive list of the various motions but demonstrates various issues the Court has previously considered

### a.      Pre-amendment Motions.

Because all motions through Docket No. 304 were filed before December 1, 2005, the pre-amendment version of Rule 33 applies to those motions.  The first motion designated as a new trial motion  was filed well beyond the seven-day period provided for in the pre-amendment version of Rule 33 for any grounds other than newly discovered evidence.  (Docket No. 112).  Because neither a new trial motion nor a motion for an extension of time for filing a new trial motion was received and acted upon by the Court during the seven-day period, the Court was precluded from considering any new trial motions filed after that time on grounds other than newly discovered evidence.

A review of the numerous motions filed prior to December 1, 2005 indicates that most of the issues raised in the current motion were previously raised and ruled upon by the Court.  *See Order* (Docket No. 163) (denying Docket Nos. 112, 123, 144, 147, 149, 151, 152, and 156 asserting claims of prosecutorial misconduct, failure to contact defense witnesses, ineffective assistance of trial counsel, sufficiency of the evidence, legal innocence, witnesses's motivation, double jeopardy, sub poena of phone records, and challenging Ms. Klingbeil's

**Order - 14**

letter to the Court); *Order* (Docket No. 197) (denying Docket Nos. 159, 161, 169, and 183 alleging newly discovered evidence contained in newly recorded phone conversations, letters, and  cards on grounds that the evidence did not meet the five-prong test for granting a new trial; noting that copies of tapes were given to standby counsel; and directing that copies of tapes be made available to Defendant); *Order* (Docket No. 216) (denying Docket Nos. 198 and 199 alleging newly discovered evidence, including newly recorded tapes and statements from several individuals including Bishop Huntsman, on the grounds that the Court had no authority to enlarge time for filing a new trial motion and that evidence did not meet the five-prong test; and granting in part Docket No. 200 that Defendant be permitted to listed to tapes of recorded conversations between him and the victim); *Order* (Docket No. 249) (denying, *inter alia*,  Docket Nos. 209, 222, 225, 226, 229, 232 and 236 alleging newly discovered evidence regarding tapes for failure to make the proper showing and rejecting claims of prosecutorial misconduct as unsubstantiated and ineffective assistance of counsel as more appropriately brought before the Ninth Circuit or in a post-conviction relief proceeding); *Order* (Docket No. 277) (denying further motions regarding tapes on grounds that they had previously been denied or were not properly before the Court); *Order* (Docket No. 291) (denying Docket Nos. 284, 286, and 287 claiming ineffective assistance of

**Order - 15**

counsel based on failure to call alibi witnesses or impeach Government witnesses;
prosecutorial misconduct; perjured testimony; entrapment; and missing tapes; and
seeking new trial based on alibi witnesses and newly discovered evidence from
"several sources" on grounds of being duplicative of prior claims, failure to make
requisite showing, or as more properly brought in § 2255 proceeding); *Order*
(Docket No. 311) (denying, *inter alia*,  Docket Nos. 294, 296, 297, 300, 301, and
303 raising issues previously raised in numerous previous motions and rejected).

### b.    Post-amendment Motions.

As stated above, new trial motions filed after December 1, 2005, would be
subject to consideration by the Court if the Court determined that failure to timely
file was due to excusable neglect.  A review of those motions indicates that even if
the Court had not denied them for having been filed *pro se* while represented by
counsel, they would have been denied for being duplicative of prior motions.  *See,
e.g.*, Docket No. 316 stricken by Order (Docket No. 328).

The Court notes that in the Order striking Docket No. 316, it deferred ruling
on Defendant's Second Motion for New Trial (Docket No. 305) filed after
December 1, 2005, pending resolution of a then pending motion to withdraw.  The
motion alleged ineffective assistance of counsel, conflict of interest, and newly
discovered evidence.  That portion of the motion alleging ineffective assistance of

**Order - 16**

counsel and conflict of interest will be denied as having been raised and rejected previously.  The Court will consider the newly discovered evidence claim in that motion based on 2005 tape recordings together with the current motion.

The tapes referred to in Docket No. 305 were eventually produced upon motion of the Government (Docket No. 312).  After listening to the tapes, the AUSA and Mr. Kumm, both highly competent counsel, represented to the Court that they contained no exculpatory evidence.  Mr. Kumm thereafter refused to comply with Defendant's direction to file a new trial motion.  The Court can only conclude that, just as production of prior tapes to defense counsel and Defendant over the years did not trigger any new trial motions by either of two former counsel alleging perjury on the part of the victim, the November 2005 tapes likewise do not include an admission of perjury.

The current new trial motion refers to Mr. Kumm's refusal to subpoena all of the tapes of conversations between Defendant and the victim.  The Court presumes these are the same tapes to which Defendant referred in Docket No. 305 and finds that the allegations are insufficient to warrant a new trial.

### C.    Conclusion

With the exception of the claim of newly discovered evidence based on the November 2005 tapes, all of Defendant's stated grounds for filing the current new

**Order - 17**

trial motion were previously raised and rejected for untimeliness, failure to meet the burden for newly discovered evidence, or because they were more properly the basis of a § 2255 proceeding. Defendant cannot breathe life into those claims under the amended Rule 33, because it is impossible to show excusable neglect for not raising claims that were in fact previously raised but rejected on a number of different grounds. Simply put, the broadened availability of relief under Rule 33 is not applicable to the Defendant's claims.

The three-year time period for filing a new trial motion based on newly discovered evidence ran in September, 2005, two months prior to the phone calls giving rise to the claim based on the November 2005 tapes. Assuming without deciding that the unavailability of those recorded conversations prior to the deadline constitutes excusable neglect, the Court will deny Docket No. 305 as well as the identical claim in the current new trial motion on the merits. Given the Court's long experience with Defendant, his persistent denial of guilt in the face of overwhelming evidence to the contrary, the unwillingness of his attorneys to raise these claims,  as well as the Court's considerable deference afforded to Defendant throughout several years of unending baseless motions, the Court will not waste further judicial resources addressing the latest in a series of claims that tapes of recorded conversations with the victim will demonstrate that she perjured herself at

**Order - 18**

trial.

## MOTION FOR RECORDS AND TRANSCRIPTS

As stated above, the Court will treat that portion of Defendant's new trial motion that refers to inability to defend himself without his records, motions, and transcripts as a motion for such.  The Court notes that Defendant has made prior requests for copies of transcripts and his file.  The Court has granted some and denied others.  The Court also notes that Mr. Kumm has represented to the Court that he has provided Defendant with copies of all pleadings and correspondence generated since his involvement in the case.  Mr. Kumm further represents that he is in possession of two bankers' boxes of transcripts and documents that he received from prior counsel, Mr. Finlayson.

Defendant has already been provided with copies of transcripts and a large portion, if not all, of the record – all at Government expense.  However, he claims that they have either been confiscated by BOP or not provided by counsel.  The *only* proceeding presently before the Court is the new trial motion.  Based on its resolution of the new trial motion, the Court finds that another copy of his file is unnecessary.  The *only* issue pending on appeal before the Ninth Circuit at this time is whether the sentence imposed at re-sentencing is reasonable.  The Court is absolutely certain, that the Ninth Circuit will not, during that appeal, consider any

**Order - 19**

arguments challenging the validity of his conviction.  Defendant has been

appointed counsel for his appeal who will have access to the Court's file in

preparing an argument challenging the reasonableness of the sentence.  Nothing

more is necessary.

Although under 28 U.S.C. § 2250 a court may order that certain parts of the

record necessary for determining a § 2255 motion be furnished without cost, an

indigent prisoner is not entitled to such copies unless and until he files a § 2255

motion and is granted leave to proceed *in forma pauperis*. *See United States v.*

*Connors*, 904 F.2d 535 (9th Cir. 1990).  *See also Walker v. United States*, 424 F.

2d 278, 278-70 (5th Cir. 1970) (holding a federal prisoner is not entitled to copies

of court records at Government expense to search for possible error).  Because

there is no pending § 2255 motion, Defendant is not entitled to any part of the

record, motions, or other documents in the file without cost.

Defendant is likewise not entitled to another copy of the plea and sentencing

transcripts at Government expense.  Even if there were a § 2255 motion pending,

Defendant would not be entitled to copies of the transcripts without cost unless the

Court certified that the motion was not frivolous and that the transcripts were

needed to decide an issue raised in the motion.  *See* 28 U.S.C. § 753(f).  *See also*

*United States v. MacCollom*, 426 U.S. 317 (1976) (upholding limitation on federal

**Order - 20**

prisoner's right to transcript under § 753(f)).

The Court previously advised Defendant that a district court may not consider a § 2255 motion until direct appellate review is exhausted. *Feldman v. Henman*, 815 F.2d 1318, 1320-21 (9th Cir. 1987). *See Order* (Docket No. 311).

When the Ninth Circuit partially reverses a conviction and remands a case to the district court for re-sentencing, the judgment does not become final, and the statute of limitations on § 2255 motions does not begin to run, until the district court has entered an amended judgment and the time for appealing that judgment has passed. *See United States v. LaFramboise*, 427 F.3d 680, 683-84 (9th Cir. 2005) (citing *United States v. Colvin*, 204 F.3d 1221, 1226 (9th Cir. 2000)). Defendant is advised that after his pending appeal of the sentence becomes final, he will have the opportunity to challenge his sentence and conviction on collateral review. *Id.* at 684-85.

## MISCELLANEOUS PENDING MOTIONS

A review of the docket indicates that certain other motions were not specifically addressed. Defendant's Motion to Preserve Constitutional Trial Error (Docket No. 306) and Motion for Paternity Test (Docket No. 309) are denied. Defendant's Motion to Subpoena Newly Recorded Tapes (Docket No. 307) is moot as the Court granted the Government's motion to turn over those tapes. *Order*

(Docket No. 332.)  Defendant's Motion for Extension of Time to File Sentencing Brief (Docket No. 315) is moot.  Defendant's Motion to Inform the Court (Docket No. 325), Motion for Immediate Release from Prison (Docket No. 326), and Motion for Writ of Audita Querela (Docket No. 327) are deemed stricken as having been filed in violation of the Court's Order in Docket No. 311 to refrain from filing *pro se* motions while represented by counsel.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED that Defendant's Motion for New Trial and Motion for Records and Transcripts (Docket No. 359) is DENIED.

IT IS FURTHER HEREBY ORDERED that Defendant's Motion for New Trial (Docket No. 305), Motion to Preserve Constitutional Trial Error (Docket No. 306), and Motion for Paternity Test (Docket No. 309) are DENIED.

IT IS FURTHER HEREBY ORDERED that Defendant's Motion to Subpoena Newly Recorded Tapes (Docket No. 307) and Motion for Extension of Time to File Sentencing Brief (Docket No. 315) are MOOT.

IT IS FURTHER HEREBY ORDERED that Defendant's Motion to Inform the Court (Docket No. 325), Motion for Immediate Release from Prison (Docket No. 326), and Motion for Writ of Audia Querela (Docket No. 327) are

**Order - 22**

STRICKEN.



DATED:  **October 19, 2006**

Honorable B. Lynn Winmill
Chief U. S. District Judge

**Order - 23**